UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUARDIAN FIBERGLASS, INC.,
a Delaware corporation, and
GUARDIAN FIBERGLASS
SERVICE CORPORATION,
a Delaware corporation,

                                                  Case No. 1:06-cv-178

       Plaintiffs,

                                                  Hon. Wendell A. Miles

v

BEAVER BUILDERS SUPPLY, INC.,
a Wisconsin corporation,

       Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO TRANSFER VENUE

Plaintiffs Guardian Fiberglass, Inc. and Guardian Fiberglass Service Corporation (collectively "Guardian") filed this breach of contract action against defendant Beaver Builders Supply, Inc. ("Beaver") in Michigan's Calhoun County Circuit Court. Beaver thereafter filed a Notice of Removal. The matter is currently before the court on Beaver's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 (docket no. 3). Beaver seeks a transfer of the action to the Western District of Wisconsin. Guardian has opposed the motion.[1]

For the reasons to follow, the court **DENIES** the motion.

_____

[1]On April 7, 2006, two weeks after Guardian filed its response brief, Beaver filed a reply brief in support of its motion. However, this district's Local Rules provide that reply briefs may not be filed in support of nondispositive motions without leave of court. W.D.Mich.L.Civ.R. 7.3(c). Because Beaver did not timely seek leave of court to file a reply brief in support of its motion, the court has not considered the contents of Beaver's April 7, 2006 filing.

<u>I</u>

Guardian is a Delaware corporation engaged in the business of manufacturing, marketing, and selling fiberglass insulation products and services.  The headquarters of Guardian's insulation manufacturing operation is located in Albion, Michigan, although Guardian distributes its products throughout the United States from 56 distribution centers, including one such facility located in LaCrosse, Wisconsin.  Beaver is a Wisconsin corporation which has its principal place of business in Holmen, Wisconsin.  Beaver is a building supply retailer which also offers installation of certain building products which it sells, principally in the LaCrosse, Wisconsin area.

In the mid-1990's, Guardian sought to increase its sales and further its business relationships with its customers by implementing a dealer "Installed Sales Program" ("ISP"). Through its ISP, Guardian establishes dealers as retailers and installers of Guardian's fiberglass insulation products.  Guardian administers its ISP from its facility in Albion, Michigan.

Before 1999, Beaver was a retail distributor of fiberglass products, but it did not provide insulation installation services.  In 1999, Guardian approached Beaver, suggesting that Beaver consider selling and installing Guardian insulation.   On May 4, 1999, the parties entered into a "Retail Assistance and Supply Agreement" ("the Agreement"), which was executed by Beaver in Wisconsin and sent by mail to Guardian in Albion, Michigan.  Under the Agreement, which contains a choice-of-law provision specifying the application of Michigan law, Beaver agreed, among other things, to exclusively stock and utilize Guardian insulation products for both retail sales and installation services.  For its part, Guardian agreed to provide Beaver with various

2

support services for the purpose of assisting Beaver in establishing and maintaining its insulation installation business. The Agreement provided for an initial term of five years, which was to be automatically extended until terminated either by a specified "Event of Default" or by one party's 90-days written notice of termination. The Agreement also contained a post-termination restrictive covenant, which prohibited Beaver from directly or indirectly providing installation services for a period of two years in the event of a termination of the Agreement.

The parties maintained their relationship under the Agreement until 1995. The deterioration of the relationship appears to have begun during that year when Beaver learned that Guardian had established one of Beaver's competitors in the LaCrosse area, Stock Lumber, as a Guardian insulation sales and installation retailer. This did not sit well with Beaver, which claims to have believed that Guardian had promised that Beaver would be Guardian's exclusive ISP dealer in the LaCrosse area market. In September, 2005, Beaver gave Guardian notice that Beaver was terminating the Agreement. Beaver also notified Guardian of Beaver's intent not to comply with the restrictive covenant. Although Beaver offered to retract its notice of termination if Guardian would agree to sever its relationship with Stock Lumber, Guardian apparently chose to continue its relationship with Stock Lumber.

Guardian filed this action in February, 2006, sometime after learning that Beaver was continuing to provide installation contract service notwithstanding the Agreement's restrictive covenant. Guardian also filed a motion for preliminary injunction seeking immediate enforcement of the restrictive covenant. That motion remains pending; Beaver has requested that the court first address its motion to transfer venue.

**II**

Beaver has not argued that the court lacks personal jurisdiction over it or that venue is improper pursuant to 28 U.S.C. § 1391(a).  Instead, Beaver, which argues that the Western District of Michigan is an inconvenient forum for this dispute, seeks a transfer to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) provides, in pertinent part, that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531, 537 (6th Cir. 2002).   In determining whether to transfer an action under § 1404(a), a district court "must weigh a number of case-specific factors such as the convenience of parties and witnesses, 'public-interest factors of systemic integrity,' and private concerns falling under the heading 'the interest of justice.'"  Kerobo, 285 F.3d at 537 (citation omitted).  "These factors are derived from the explicit wording of the statute, and can be distinguished on the basis of the interests which they affect."  Moses v. Business Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991).

Guardian does not dispute, and the court finds, that venue would be proper in the Western District of Wisconsin; therefore, that district is one where the action "might have been brought" within the meaning of 28 U.S.C. § 1404(a).  Beaver, as the moving party, bears the burden of establishing that the case should be transferred.   Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  Although a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive.  Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 413 (6th Cir. 1998).

Beaver's arguments in support of its motion may be summarized as follows:

1.     Private interest factors favor a transfer to the Western District of Wisconsin because the sources of proof are located in that district, party witnesses will not be inconvenienced by having to travel to that district, non-party witnesses will be inconvenienced by having to travel to this district, and the parties will be unable to compel the attendance of unwilling non-party witnesses.

2.     Public interest factors favor a transfer to the Western District of Wisconsin because the dockets are less congested there and the lawsuit affects local interests in that district, including sales by a resident company there and a proposed restraint on trade in the area's building supply market.

Beaver argues that the sources of proof are predominantly located in the Western District of Wisconsin because Beaver's own records are there and because some proof relating to Stock Lumber's relationship with Guardian are there.  However, much of Guardian's sources of proof are located in this district.  Although Beaver also argues that some of Guardian's party witnesses have already traveled to Wisconsin and will not be too inconvenienced by having to travel there again, the court fails to see how this factor bears much weight.  In addition, although Beaver argues that a number of non-party witnesses are likely located in the Western District of Wisconsin beyond this court's subpoena power, Beaver has not identified by name any witnesses, apart from its own employees, who reside in Wisconsin.[2]  Beaver has simply not pointed to any

---

[2]In deciding a change of venue motion, the convenience of non-party witnesses is considered a more important factor and therefore given greater weight than the convenience of party witnesses.  Steelcase, Inc. v. Smart Tech., Inc., 336 F. Supp.2d 714, 721 (W.D. Mich. 2004).  However, it is well-established that the party seeking a transfer must clearly specify the key witnesses and to be called and must make a general statement of what their testimony will cover.  E.g., Holiday Rambler Corp. v. American Motors Corp., 254 F. Supp. 137, 139 (W.D. Mich. 1966).  The emphasis is on the materiality of the witnesses' testimony, and not simply who has the greater number of potential witnesses who reside in the relevant districts.  See, e.g., id.; R.D. Offutt Co. v. Lexington Ins. Co., 342 F. Supp.2d 838, 842 (D.N.D. 2004).

private factors which weigh strongly in favor of a transfer to the Western District of Wisconsin.

Beaver argues that the dockets are less congested in the Western District of Wisconsin. However, the relevant statistics do not readily support this position.  For example, 2,081 cases were filed in this district in the year 2005, in contrast with 1,109 filed in the Western District of Wisconsin during the same year.  However, the case filings per judge in this district were actually higher in the Western District of Wisconsin: 520 here in 2005, in contrast with 555 there during the same year.  In addition, although Beaver also argues that this action affects local interests in the Western District of Wisconsin, Guardian likewise contends that the action affects local interests here, where Guardian has substantial connections.  As with the private interest factors, Beaver has simply not pointed to any public interest factors or persuasive public policy reasons which strongly favor a transfer of this case to the Western District of Wisconsin.

Because jurisdiction and venue requirements are often easily satisfied, a plaintiff may often be able to choose from among multiple forums.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 250, 102 S.Ct. 252, 263 (1981).  When a lawsuit involves parties from more than one state, one or more of the parties will inevitably be inconvenienced by the chosen forum to some degree. However, "[s]ection 1404(a) provides for a transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."  Van Dusen v. Barrack, 376 U.S. 612, 645-646, 84 S.Ct. 805, 824 (1964).  Beaver has failed to show that the Western District of Wisconsin is a preponderantly more convenient forum or that considerations of fairness weigh in favor of a transfer to that district.

**<u>Conclusion</u>**

For the foregoing reasons, the court denies the motion to transfer venue.  **Plaintiffs shall file their written response (if any) to the defendant's motion for preliminary injunction within ten (10) business days from the date of this order.**

So ordered this 25th day of April, 2006.


<u>/s/ Wendell A. Miles</u>
Wendell A. Miles
Senior U.S. District Judge

7